923 F.2d 850
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Doris R. WINKLER, Plaintiff-Appellant,
v.
CHARLOTTE MOTOR SPEEDWAY, INCORPORATED, Defendant-Appellee.
 No. 90-3059.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 4, 1990.
Decided Jan. 25, 1991.
As Amended Feb. 26, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Frank W. Bullock, Jr., District Judge. (CA-88-1112-D-C)
 Albert M. Salem, Jr., Albert Salem & Associates, P.A., Tampa, Fl., for appellant.
 Frederick K. Sharpless, J. Reed Johnston, Jr., Michael D. Holt, Tuggle, Duggins, Meschan & Elrod, P.A., Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS and WILKINSON, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Doris Winkler appeals the district court's grant of summary judgment in favor of defendant Charlotte Motor Speedway, Inc. (Speedway) in Winkler's diversity action against Speedway claiming that Speedway's negligence proximately caused her injuries sustained when a fence inexplicably fell on her while she watched a race. The district court held that Winkler had failed to produce any evidence showing negligence on the part of Speedway and that the doctrine of res ipsa loquitur was inapplicable. We agree and affirm.
 
 
 2
 * On June 9, 1985, Winkler attended an auto race sponsored by the Sports Car Club of America (SCCA), held at the Charlotte Motor Speedway track. She had come to see her son race and at the end of her son's race, she was waiting in the paddock, an area in the infield behind "pit row."[1] She stood behind an 8 by 12 foot gate, which was part of the chain link fence surrounding the infield. The gate rolled from side to side, on rollers. Suddenly, and for no apparent reason, this gate fell on Winkler, injuring her foot and ankle.
 
 
 3
 Charlotte Motor Speedway is owned by the defendant, Speedway. For the days of June 8 and 9, 1985, during the course of the SCCA auto races, the speedway was being leased to, and was under the exclusive control of, the SCCA. Under the oral lease agreement, the SCCA was responsible for all aspects of the operation of the track.
 
 
 4
 Following discovery, Speedway moved for summary judgment, contending that Winkler had no evidence of negligence and could not establish res ipsa loquitur; that she could not show that the lessor, Speedway, rather than the lessee, SCCA, was responsible for unsafe conditions at the track; and that the waiver signed by Winkler precluded any liability on the part of Speedway. A magistrate judge granted the summary judgment motion on the basis of the first defense theory, namely that Winkler could not show that Speedway was negligent or that Speedway's negligence was the proximate cause of Winkler's accident. The magistrate judge reasoned that Winkler had not produced any evidence as to why the gate fell nor whether the event which damaged the gate--if any--occurred during Speedway's possession of the property. The magistrate judge also opined that, given the fact that the track had been leased to SCCA at the time of the accident, the only way that Speedway could be held liable for Winkler's injury was if either (1) Speedway had contracted to repair the gate but negligently failed to do so, or (2) the premises were demised to SCCA in a ruinous condition. From this the magistrate judge concluded that on the evidence adduced by Winkler, she could prove neither circumstance, that there was therefore no genuine issue of material fact, and Speedway was entitled to judgment as a matter of law. The district court, considering Winkler's objections, adopted the magistrate judge's opinion granting summary judgment.
 
 
 5
 This appeal followed.
 
 II
 
 6
 Under North Carolina law, the owner or lessee of property owes invitees[2] a duty to maintain the premises in a reasonably safe condition and to warn of hidden dangers or unsafe conditions which are known or discoverable through reasonable inspection. Porter v. Mid-State Oil Co., 366 S.E.2d 245, 246 (N.C.App.1988). The mere existence of unsafe conditions is not enough to prove negligence, however. Id. Winkler must show that the Speedway "either knew of the unsafe condition or should have discovered it through reasonable inspection." Id.
 
 
 7
 As evidence of Speedway's negligence, Winkler points to evidence that the Speedway did not inspect the premises before leasing them to SCCA. She produced no evidence, however, (1) that the defective condition existed when Speedway turned the premises over to SCCA; (2) that Speedway knew of the defective gate or would have discovered this flaw as part of a reasonable inspection; or (3) that Speedway's failure to inspect the gate prior to turning over possession of the track to SCCA was unreasonable. Winkler offered no evidence at all explaining why the gate fell. The only suggestion offered in deposition was that a car or tow truck might have struck the gate, damaging it.
 
 
 8
 Winkler contends that summary judgment was inappropriate because "there was no evidence presented that anything occurred during the two day SCCA event that would have caused the gate to become lose [sic] or unstable." However, there was also no evidence presented that anything occurred before the SCCA event that would have caused the gate to become loose or unstable. Winkler suggests that the gate might have become damaged when a car passing out of the track area crashed into it. There is no evidence, however, that such a collision occurred. Even if we assume that such a collision was the only possible cause of the defect in the fence, the record is barren of any evidence as to whether such a collision occurred during the time Speedway was in sole possession of the property. Because Winkler has the burden of persuasion, her contention that no evidence negates her negligence claim is irrelevant; the point is that no evidence supports it. A jury, therefore, could have no rational basis upon which to find Speedway negligent given the cast of the burden of persuasion.
 
 
 9
 While never made explicit, Winkler's case seems actually to be found on a theory of res ipsa loquitur. Res ipsa loquitur applies only when negligence may be "inferred from the physical cause of the accident, without the aid of circumstances pointing to the responsible human cause." Sharp v. Wyse, 346 S.E.2d 485, 487 (N.C.1986). That is, the cause of the accident must be so plain that any reasonable person would agree on the one and only responsible party. The principle does not apply "when more than one inference can be drawn from the evidence as to whose negligence caused the injury ... or when the instrumentality causing the injury is not under the exclusive control or management of the defendant." Id. at 488 (citations omitted).
 
 
 10
 Res ipsa loquitur is inapplicable here for both reasons suggested in Wyse. First, even if we assume that this accident was the result of negligence, a rational factfinder could not properly infer that the negligent party was Speedway. The two most likely causes of the accident would seem to be either Speedway's failure to inspect and repair the property prior to the SCCA races or SCCA's failure to fix the gate--or keep people away from it--after the gate was damaged during the two days of races. Because there is nothing in the record suggesting when, or how, the fence came to be defective, it would be impossible for a trier of fact rationally to determine whose negligence--if anyone's--was responsible for the injury.
 
 
 11
 The plaintiff's case also fails under the second prong of the Wyse test because the gate was not under the exclusive control or management of Speedway during all of the critical period. At least two parties maintained exclusive control of the track during part of the time when the gate might have become defective. Speedway controlled the property before June 8, 1985, but SCCA maintained possession for a critical day and a half immediately prior to the accident. The existence of multiple possible tortfeasors renders the doctrine of res ipsa loquitur inapplicable here. As the Wyse court explained,
 
 
 12
 The rule of res ipsa loquitur never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the only probable tortfeasor. In such a case, unless additional evidence, which eliminates negligence on the part of all others who have had control of the instrument causing the plaintiff's injury, is introduced, the Court must non-suit the case.
 
 
 13
 Id.
 
 
 14
 At trial on the evidence as forecase on the summary judgment record, no jury properly could be permitted to find for the plaintiff because there is no evidence of negligence. The only way to reach a jury without any specific evidence of negligence--by invoking the doctrine of res ipsa loquitur--is simply unavailable here. Summary judgment is appropriate when a non-moving party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Winkler has failed to do so, and summary judgment was properly entered against her.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Before entering the paddock, Winkler signed a release purporting to waive any claims against SCCA and "the owner of the premises" for any injuries sustained there. The district court did not reach the question of whether Winkler's claim was barred by this release and we need not do so here
 
 
 [2]
 We assume, for the purposes of this appeal, that Winkler was an invitee